Thank you and thanks for the welcoming that you provided at the outset. My name is Jeff Dalslaug. I'm counsel for Argonaut. The heart of this appeal is whether there is mandatory jurisdiction based on St. Francis' bad faith counterclaim in this case. Can I ask a question out of the box? Sure. The statute, and a lot of cases don't grapple with the statutory language here, the statute is pretty clear that with regard to any declaratory judgment, the district court may exercise jurisdiction. I don't see anything from the Supreme Court that even recognizes this kind of mandatory jurisdiction over a declaratory judgment option. Is this something that's crept into the Ninth Circuit case law and that's what you're relying on? Or do you believe that this is either statutorily based or the Supreme Court precedent requires us to even consider mandatory jurisdiction over a declaratory judgment? Thanks for the question, Your Honor. I think the Ninth Circuit has firmly embraced this in a series of cases. And the most recent being the United National case. That's the case that basically said there was not a model of clarity in the prior opinions. But in that case, the court clearly said that there is mandatory jurisdiction when you have a counterclaim, a monetary counterclaim, that is independent of the declaratory judgment. And that's the situation that we have here. Even the trial court, he made a number of decisions that were incorrect. But one of the decisions he's made that was correct, Your Honor, was the fact that the bad faith claim under Hawaii law was absolutely independent of Argonaut's declaratory judgment act. And that is a finding by the trial court that has not been appealed. And, in fact, that does stand for the proposition under Ninth Circuit law that this is mandatory jurisdiction. And the only issue that we believe the trial court committed an error on is concluding that there was an exception to mandatory jurisdiction when a counterclaim is characterized by a defendant as judicial. That decision by her is subject to a de novo review by this court. And we think it's pretty clear based upon United National's nod graphs and a number of other cases. Did United National address that question? Did it have a situation in which the counterclaim that was to become the critical load-bearing portion of the jurisdictional claim had been expressly asserted as contingent upon rejection of an initial objection to jurisdiction? There was not a conditional counterclaim in United National. There was a reimbursement, but an insurance reimbursement claim in that case. It was just a counterclaim. It wasn't conditional. But the court found in that case that, and it's been affirmed on a number of other cases, we cited a half-dozen. United National didn't have the question in front of it that we have today. We don't have a dispositive decision on this specific issue from this court. That's correct. It was not a conditional counterclaim. There's no dispute that a party can put in a conditional counterclaim, right? I mean, there's actually a fair amount of dispute about whether there's such a thing. There are cases, there are some cases in other jurisdictions that have found that conditional counterclaims are okay. Certainly in the Ninth Circuit, I think the trial court cited three cases, the City of Seattle case, the two other cases that I think we highlighted in our brief. They were the City of St. Paul case and the La Maloma case. Those are the three cases that the trial court cited for the proposition that conditional counterclaims are acknowledged in the Ninth Circuit. We don't make any of those cases stand for that proposition. So you are contesting whether a conditional counterclaim can even be pled under the federal rules of civil proceedings. I mean, everyone agrees there is no rule that says that, right? Well, there's no rule that allows it. There's no rule that prohibits it. Let me ask you this, though. If your position were adopted, because it seems to me that this is one of the issues we may need to address. If your position were adopted that you cannot plead a conditional counterclaim, which way does that cut? Because would that mean that the counterclaim is ineffective because it was improperly pled? Or does that mean that you, the court, would automatically strike the conditional portion and treat it as pled? Yeah, I mean, I think St. Francis would agree that if this counterclaim was pled without any conditions, there's no question about what it would create mandatory jurisdiction. At least in the Ninth Circuit. All my comments are focused on the Ninth Circuit. Yeah. Which is why, in this particular case, the underlying judge that handled the district court decision, she relied upon a single case in support of her ruling. She relied upon the Seventh Circuit nap case. And that was the case that she basically relied upon to decide that there was an exemption to this mandatory jurisdiction for conditional counterclaims. But when we read the nap case, and in our brief, we spend a lot of time dealing with it, the nap case had nothing to do with mandatory jurisdiction. Was this counterclaim a compulsory counterclaim? It probably was. I think it probably was. So they had no choice. If they were going to answer, they had to assert it. Right. So is it your position that if they file an answer, then tough luck? Because if you file an answer, and you object to jurisdiction, and you assert the compulsory counterclaim, you've created the jurisdiction, and catch 22. Is that your position? Our position is what they should have done if they wanted to challenge the court's jurisdiction is bring an immediate motion to dismiss on jurisdictional grounds. I want to test the scope of this. Suppose there's a situation where you don't have the facts needed to bring that initial motion right out of the box. I thought the rules say that all objections to jurisdiction are preserved by being asserted in an answer. And so you're now creating a distinction between filing an initial motion and an answer that I don't see in the rules of civil proceedings. Well, as a factual matter, the information that they had when this case was initially filed by Argonaut. No, I understand that this case, they probably could have done it out of the box. But what about the situation where someone, you know, often you're objecting a personal jurisdiction. You know, where you have some other objection, where you need some facts in order to present the objection. Then in normal procedures, file an answer, get the facts, and then come back. But under your theory, they can't do that if they were to need facts for the initial objection here. That to me is a different issue and a different set of facts. Maybe different, but I'm not sure I see if we accept your rule that that isn't the consequence of it. Well, I think the question, here's the question. If you accept a conditional counterclaim under these circumstances, then defendants will have carte blanche in characterizing any claim they file as conditional. And that will control whether a court has subject matter jurisdiction. That seems to me to create a lot more issues than... Wouldn't the limitation be, as it is also in the personal jurisdiction context, that if you delay too long in pressing that threshold jurisdiction, and you start to get into the merits, that it's worth it? And you've argued that here, that they were getting too far into it. But isn't that the break against the concern that you're identifying? Yeah, it does. And we actually did argue that in the context of whether the conditions were satisfied or waived. I mean, the district court was required under the United National case to consider all the conduct until the point in time when the motion was filed. And just so you know, there were four months between when we filed the complaint and when they filed their motion to dismiss. They had four months. And during that four months, they engaged in all kinds of conduct and activity that the trial court would reasonably believe if it was a confirmation that there was subject matter jurisdiction. How long was it after their first appearance that they filed it? Four months. I mean, they appeared... The original complaint was filed in late December. And the counterclaim and answer was not filed until... Actually, the counterclaim was filed in April, and then the motion to decline jurisdiction was filed in early May. So for four months, they engaged in all kinds of activities that we highlighted in our brief, including presenting motions, presenting statements. How are you prejudiced by the delay? We're prejudiced by the delay because if, in fact, you grant this, you grant this motion, you dismiss this case, we will go down to the state court and we will file a declaratory judgment, and then they will have to bring their compulsory counterclaim, and we will, no question, we will have diversity of jurisdiction and we'll remove it. And we'll be right back where we started. Well, in that case, you would bring it in a separate proceeding or in the proceeding that... There's already a state district court proceeding, correct? There are three different underlying actions involving the victims of abuse against St. Francis and against Kamehameha. We would definitely not bring it in any of those actions. It doesn't belong in any of those actions. Well, why doesn't it belong in those actions when the subject matter is whether you need to cover their defense in those actions? We actually are covering their defense, and we have been defending for quite a while. Oh, that's right. You initially denied and then you decided to cover it. So this is an action saying you want a declaratory judgment action saying, Hey, we've been paying this, but we want to stop now. We don't think we owe this to you. There's a number of different issues, coverage issues raised by the declarator, but that's one of them. Okay. And so it doesn't belong in any way in the underlying case, which is why they characterize the underlying cases as parallel proceedings. They're really not. They're different parties. They're raising different issues. They're not dealing with coverage issues whatsoever in the underlying case. So the bottom line is we would be right back at several points. It's out of the way, I think. No, I mean, they will have to assert their bad faith counterclaim. It's a compulsory counterclaim and it runs out of the opportunity of our declaratory judgment. It will be right. It's just taken us a year and a half to do that. And that's why in this particular case, there should not be an exception to the mandatory jurisdiction, especially when they have the opportunity in this case to file their motion to dismiss immediately after we commence this act. If they would have done that, this would be a different case. But your position, hold on. Your position is even if they had done that, you still would have gotten to federal court, because if they had filed a motion to dismiss before filing their answer and counterclaim, everyone agrees that the district court would have had discretion. It would not have been a mandatory declaratory judgment. And if the district court had refused its discretion and dismissed the case in those circumstances, you would have gone to state court and done exactly what you just said you were going to do. And then they would have had to file their counterclaim. And then you would have removed based on diverse conclusions. So either way, we're back in the same boat, aren't we? I think you're correct. I mean, unless they wanted to waive their compulsory counterclaim, we would be back in federal court. And that's one of the arguments we made in front of this trial court. We said there are not parallel proceedings down in state court that this belongs. So we would do to go back and commence an action in state court, we'd be right back up to federal court. It didn't have much influence on this particular trial court, but that's an argument that we did make. So the bottom line is there's a half dozen different Ninth Circuit cases that stand for propositions the Ninth Circuit recognizes mandatory jurisdiction. And the only issue, because there's no question that our counterclaim was independent of the declaratory judgment, the trial court found that. And there's no question we have diversity of jurisdiction. So the only question before your honors is whether there's this exception to mandatory jurisdiction when somebody asserts a conditional counterclaim that's not provided for by the rules, that's not recognized by any Ninth Circuit case. And if you look at the Third Circuit case, the Brown case, they dealt with this, they're the only circuit case that has dealt with this precise issue, and they rejected the argument that's being made right now. If you read the Brown case, it'll be crystal clear that they are following the same logic that we're advocating. I see I'm out of time. We'll give you a little bit of time for a rebuttal. Thank you. Mr. Kimura. Good afternoon. May it please the court, Jordan Kimura on behalf of Apelli St. Francis Medical Center. Just an immediate response to my colleague's point about St. Francis Medical Center waiting four months, which is point the court's attention to ER page four, which indicates that the defendant, St. Francis Medical Center below, had filed its answer to the complaint and its counterclaim on April 2nd, 2019. And on May 2nd, 2019, so almost exactly or exactly a month later, then filed its motion to decline jurisdiction. And didn't you file an initial motion right out of the box? Your Honor, I do not know that from a strategy perspective or what was going on in the minds at the time. However, I will note that St. Francis Medical Center did preserve its affirmative answer for affirmative defense. That federal jurisdiction. Mr. Kimura, I think you're you might get away with your mic. Can you hear me a little bit better? Yes. Okay. So I would point the court to the St. Francis Medical Center's answer at ER 71, where St. Francis Medical Center preserved the objection that federal jurisdiction over Argonauts for a relief claim is inappropriate because the claim presents so little to the state of the United States. Fading out again. We're losing you again. Can you hear me better? Yes. Yes. I'll just try to keep my voice up. I apologize. What's your answer to their point that this is all pointless because if we send you back to state court, they're just going to file, you're going to have to do the compulsory counterclaim. It'll come back and then it's right within the United case and it's mandatory and it'll stay in federal court. Well, Your Honor, I think that presupposes the fact that St. Francis Medical Center would actually file a bad faith counterclaim. That's not in the record. There's nothing that indicates that St. Francis Medical Center would in fact file. Well, let's cut to it. I mean, first you dispute that if St. Francis does file such a counterclaim, we've recycled and we're back in federal court. And if the answer to that is yes, then aren't you telling us, okay, the real answer here is St. Francis has to decide because if it decides to file, we're wasting our time. Is St. Francis prepared to commit to not filing such a counterclaim? I don't know the answer. Otherwise, well, then why are you wasting our time? Because do you have a disagreement with the proposition that filing such a counterclaim brings us right back to federal court? Well, Your Honor, I would also, I mean, that would raise issues. Do you have a disagreement with that proposition? The answer may be yes, but if the answer is no, then it seems to me you really are wasting everybody's time unless you have an answer to question number two. Well, Your Honor, the answer I believe is no, because under the R&D latex case, if the claims are brought in state court and St. Francis does bring a bad faith counterclaim and Argonaut were to remove that case to federal court, assuming, of course, there is complete diversity of citizenship from the removal, then yes, then there would be complete diversity of jurisdiction and the R&D latex case would apply for the district court to apply mandatory jurisdiction over St. Francis. However, there are issues of abstention that might arise in that situation, and I would also point the court to this court. Wait, back up. What issues of abstention would apply? You mean for the federal district court to abstain from federal jurisdiction? That's correct, Your Honor, because I would point this court to its Hungerford decision, which states that courts should generally decline to exercise their jurisdiction in insurance coverage and other declaratory relief actions within the only district of state law during the penalty of parallel proceedings in state court. Okay, but the idea is there wouldn't be a parallel proceeding because the case has been removed to federal court, and that's the position that Argonaut appears to take and sounds right. Well, Your Honor, I think what St. Francis Medical Center might do in that case is consolidate the action with the parallel state court proceedings, and then there would be an issue as to whether there's complete diversity of citizenship. What do you identify as the parallel state court proceeding? That would be the underlying proceedings that are brought by the claimants that have sued St. Francis Medical Center and Kamemea Schools for sexual abuse purportedly arising out of Dr. Brown's conduct. But you would have to do that while it's in state court, wouldn't you? Or I guess you could still file that. If they removed it, you could still file that in federal court, and then the federal district court, I guess, would best be able to decide that issue. But I'm not aware of that defeating jurisdiction, not defeating federal jurisdiction. I mean, it might stay the case. Abstention is premised on there being someplace else where the issue is litigated, and I guess that's what I'm looking for, because as I understand the scenario outlined by Argonaut's counsel, there isn't a case in state court raising the coverage issue or the bad faith issue because that case has been removed to federal court once the counterclaim has been filed. And that seems right to me. So if there's another way for St. Francis to keep this case in state court, I'd be interested. But so far all I've come up with is St. Francis deciding not to file a counterclaim. And that's a possibility, but that's why I posed the question to you at the beginning, because you may not be the decision maker, but it seems to me if the answer is that St. Francis is going to file a counterclaim, we're all wasting our time because we're going to wind up right back in federal court. So my premise had been, and I've thought about this, must be that St. Francis has decided it's willing, in order to stay in state court, to forego the bad faith counterclaim. But apparently that decision hasn't been made yet, so I'm still stuck here thinking, gee, are they really wasting our time? And can you give me any help on that? Well, Your Honor, I mean, clearly St. Francis Medical Center is the defendant and the appellee in this action, and so we are defending the court's record. I do think that the decision of whether or not the appellee at St. Francis Medical Center actually moved forward with a bad faith claim is something that's not in the record. And there's nothing that this court can rely on to go one way or the other that St. Francis Medical Center would actually file such a claim. Are we in a situation where the Brillhart analysis overlooks some very significant factor and maybe this needs to go back? The district court didn't consider that we're all spinning our wheels and that maybe the Brillhart analysis is effective for that reason and needs to go back. Your Honor, I'm not quite sure I understand your question. Well, even assuming that you're right under the current posture that there is no mandatory jurisdiction, the district court then, because then the district court moves to the discretionary factor, it's liberated from the mandatory rule, it goes to the discretionary, which is the Brillhart factor. In weighing that, the district court did not take into account the fact that if it goes back, it's going to bounce back and we're just wasting time. If that had been brought to the district court's attention and the district court had considered it, the district court might have come out the other way on Brillhart discretion and maybe we should give the district court that chance and the district court can find out from your client whether you're going to waste everyone's time on remand. Well, Your Honor, I would submit that that's not really a consideration under Brillhart. It's not a consideration under Brillhart? Whether or not if the discretionary jurisdiction is declined, the case is going to bounce right back into the same court? Well, not specifically. There certainly is a consideration of avoiding... I've been looking at the factors, the convenience of the parties, whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue, whether the use of a declaratory action will result in entanglement between the federal and state courts. So those factors aren't broad enough to take into account this kind of inefficiency that's being thrust upon us? Well, Your Honor, I guess that does arise in the diesel factors that this court has set forth. And yes, Your Honor, I think that would be a consideration that would play into the diesel factors as Your Honor has stated. Okay, so then maybe we should send this back. Well, Your Honor, I would submit that, based on the record for the court, when you apply for a part of diesel, based on the record, there's no reason to send this case back to that specific consideration. Maybe the district court could try to pose the question that we've been posing and you're not in a position to answer. Because if it turns out that unless St. Francis commits to not filing a counterclaim, we're just spinning our wheels. Then I would sit there as a district court judge and wonder, well, is there any point now in sending this back to state court? Because it's going to be back on my plate a year from now. So maybe if the judge poses that question, Judge Gilmour can actually get an answer from St. Francis as to whether it's going to file this counterclaim and bring the case back to federal court. Or maybe there's another way to break the cycle, but we haven't arrived at it today, and Argonaut says, look, we're going to be back in the same place a year and a half later, and that really doesn't seem to make sense to anybody. If we send it back to Judge Gilmour, maybe she gets an answer to that question. Maybe you're right. Or maybe you can provide an answer to that question to us next week. I'm not sure that St. Francis Medical Center will be in a position to provide that answer to this court next week, but maybe you're right, Judge Clifton. Can I ask another question? Opposing counsel was asked whether it was compulsory counterclaim. You've kind of conceded. Based on this discussion, I would assume you've conceded that it is a compulsory counterclaim, but I wanted to ask the question specifically, because it's not intuitive to me that it is a compulsory counterclaim. Yes, Your Honor. I think we would submit that, at least for purposes of this appeal, it is a compulsory counterclaim, and that if the counterclaim weren't pledged conditionally, under the R.E.P.A.T.E.X. case, the district court would have had to exactly enforce your judgment. No, I understand that position, but my question is, is it a compulsory counterclaim such that if St. Francis did not raise the counterclaim in the declaratory judgment litigation, they would lose the opportunity to bring it in subsequent litigation? Yes, Your Honor, I believe that it is. Yes, Your Honor, and I believe our briefing does point to that. Before your time is up, I'd like you to speak to one other subject that came up during Mr. Buslog's presentation. That has to do with the passage of time, and indeed Judge Collins has been asking about that. Usually when cases get moved back and forth between state and federal court, more commonly by way of removal, there's a tight time frame. Parties are expected to act real quickly, and sometimes it isn't triggered right at the beginning. Sometimes the availability of removal comes later in the case, although there is ultimately a limit. And what I'd like you to speak to is whether the time taken before the motion was filed, and I believe it was early May, was that so deep into the litigation that we should say, no, that's something you should have done at the beginning. We're now four or five months. You've presumably had your scheduling conference. You've put together a discovery plan. The case is down the track a little ways, and for purposes of figuring out what court it's going to be in, it's too late. Could you speak to that question, please? Yes, Your Honor. The cases that were cited by Argonaut in support of this argument that somehow St. Francis Medical Center had waived the motion to decline jurisdiction all had circumstances where the parties were well into discovery. Here, St. Francis Medical Center had only filed its case one month prior to filing its motion to decline jurisdiction. No discovery had been made. There wasn't a significant amount of time that had passed, so there seems to be no prejudice to Argonaut with respect to the filing of the motion to decline jurisdiction. I see that my time is almost up, so unless there are any additional questions, St. Francis Medical Center would request that this court affirm the district court's decision. Thank you. Thank you. Thank you, counsel. Mr. Buslack, we'll give you two minutes for rebuttal. Thank you. I appreciate it. Just to start with his last answer and work forward, on the time delay, we think four months is way too long. They knew all the facts they needed to know to file their motion to dismiss right out of the block, and our amended complaint was filed in late December. They did not file their motion to dismiss until May. In the meantime, they must have submitted, and we've documented in our brief, a half-dozen different filings with the court related to a discovery schedule, related to requesting a jury trial, giving their initial disclosures on what their damages were for the counterclaim. They did a lot of things. We didn't take the discovery, but they did a lot of things. The other point that I would make is, you asked my colleague a tough question. Why did you wait so long to file this motion? And the answer was, initially, that it was, you don't know, and then it was a strategic issue. And I think that's exactly what we're talking about here. And the courts did not allow filings up that are strategic, that are intended to monitor whether they want to be at a jurisdiction by dressing up their pleading as a conditional counterclaim. And I would call the attempt to the United National case where the court disregarded the policyholder's artful pleading in an attempt to avoid mandatory jurisdiction. That's what's going on here. This is artful pleading at its height. And it's artful pleading that it's a waste of time because we'll end up right back here, because they're not going to give up compulsory counterclaim. I just can't imagine that's the case. And it is part of the record. We put it in our brief, and it wasn't addressed by St. Francis. So they're completely dodging that issue, and they'll continue to dodge the issue as long as this court allows. Thank you for your time. Thank you both for clarifying this complicated case. And the case is now submitted.
judges: Clifton, Nelson, Collins